IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| *In re* SUBPOENA DUCES TECUM TO VERIZON WIRELESS | |
| **KATHLEEN MILLS,** *et al.*, <br><br> Petitioners, <br><br> v. <br><br> **HISPANIC NATIONAL LAW ENFORCEMENT ASSOCIATION NCR,** *et al.*, <br><br> Respondents. | Civil Action Nos.: TDC-19-1744 <br> TDC-19-1799 <br> TDC-19-1806 <br> TDC-19-1808 <br> TDC-19-2118 <br> TDC-19-2119 <br> TDC-19-2120 <br> TDC-19-2121 <br> TDC-19-2122 <br> TDC-19-2123 |

**MEMORANDUM OPINION**

Currently pending before the Court are 10 motions to quash subpoena, or in the alternative, motions for protective order for phone and text records[1] (collectively "Motions to Quash"), all of which arise out of the same underlying action: *Hispanic National Law Enforcement Association NCR, et al., v. Prince George's County, et al.*, No. 18-cv-3821-TDC

---

[1] *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Mills Motion"), No. 19-cv-01744-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Prince George's County Motion"), No. 19-cv-01799-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Stawinski Motion"), No. 19-cv-01806-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Murtha Motion"), No. 19-cv-01808-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Mints Motion"), No. 19-cv-02118-TDC (D. Md. filed June 6, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Alexander Motion"), No. 19-cv-02119-TDC (D. Md. filed June 6, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Ghattas Motion"), No. 19-cv-02120-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Lightner Motion"), No. 19-cv-02121-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Velez Motion"), No. 19-cv-02122-TDC (D. Md. filed June 10, 2019); *In re Subpoena Duces Tecum to Verizon Wireless, et al.* ("Powell Motion"), No. 19-cv-02123-TDC (D. Md. filed June 10, 2019).

(D. Md. filed Dec. 12, 2018) (hereinafter the "Underlying Action"). Petitioners include four (4) named-defendants and six (6) nonparties to the Underlying Action. Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the underlying matter was referred to the undersigned by the Honorable Theodore D. Chuang for all discovery and related scheduling matters. Underlying Action, ECF No. 48. Additionally, in each of the cases a separate referral has been made to the undersigned. The Court has reviewed the Motions to Quash, the oppositions thereto, the related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons stated herein, the Court GRANTS Petitioners' Motions for Protective Orders and DENIES Petitioners' Motions to Quash. A separate order shall issue.

I. **Procedural Background**

On December 12, 2018, Plaintiffs Hispanic National Law Enforcement Association NCR ("HNLEA") and United Black Police Officers Association ("UBPOA"), along with 12[2] of their members who are or were employed by the Prince George's County Police Department ("PGCPD") (collectively "Plaintiffs"),[3] filed the Underlying Action alleging a custom and practice of discrimination and retaliation against officers of color by the PGCPD and certain high-ranking PGCPD officials (collectively "Defendants"). Pls.' Compl., Underlying Action, ECF No. 1. Plaintiffs asserted claims under 42 U.S.C. § 1983 for discrimination on the basis of race and color, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and retaliation, in violation of the First Amendment. *Id.* at ¶¶ 213–29.

---

[2] Plaintiffs' Amended Complaint adds three additional individual plaintiffs bringing the current total to 15. Pls.' 1st Am. Compl., Underlying Action, (May 28, 2019), ECF No. 54.

[3] Respondents to the Motions to Quash are Plaintiffs in the Underlying Action.

2

On February 26, 2019, Defendants filed their First Motion to Dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Underlying Action, ECF No. 30. On June 7, 2019, a hearing was held before Judge Chuang. Underlying Action, ECF No. 57. On July 8, 2019, Judge Chuang partially granted Defendant's First Motion to Dismiss and dismissed several of Plaintiffs' claims against individually named Defendants without prejudice. *See* Order, Chuang, J., Underlying Action, ECF No. 74.

On May 28, 2019, Plaintiffs amended their Complaint and added claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, claims of discrimination in violation of Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, and other common law claims. Pls.' 1st Am. Compl. ¶¶ 276–300. The same day Judge Chuang heard arguments on Defendants' First Motion to Dismiss, Defendants filed a Second Motion to Dismiss responding to the new claims alleged in Plaintiffs' Amended Complaint. Underlying Action, ECF No. 58. That motion is currently pending before Judge Chuang.

At issue in this decision is a subpoena (the "Subpoena") Plaintiffs served on Verizon Wireless ("Verizon") on or around May 13, 2019.[4] Verizon is a nonparty to the Underlying Action. Plaintiffs sought information concerning 11 phone numbers identified in the Subpoena.[5] *Id.* Specifically, Plaintiffs sought:

---

[4] All of the Motions to Quash are addressing the same Subpoena, copies of which were attached as exhibits to Petitioners' Motions. *See, e.g.*, Subpoena to Produce Docs., Information or Objects, Mills Mot., ECF No. 1, Ex. 2.

[5] At one point, seven of the requested phone numbers were owned by Petitioner Prince George's County and issued to its employees for official use. *See, e.g.,* Powell Mot. ¶ 5. However, in May 2019, Petitioner Powell retired from PGCPD and ownership of the phone number issued to him was transferred to him. *Id.*

3

> Records relating to the phone numbers attached . . . for the period January 1, 2016 through the present, including the time, date, duration, and destination/origin phone number for all incoming/outgoing calls, and the time, date, destination/origin phone number, and content for all text messages.

Subpoena 1. On June 6 and June 10, 2019, Petitioners[6] filed their respective Motions to Quash.[7] *See* Motions to Quash. On July 16, 2019, Plaintiffs informed Verizon by letter that they were withdrawing their Subpoena request for text message records associated with the phone numbers. *See, e.g.*, Pls.' Resp. to Mots. to Quash Subpoena Issued to Verizon ("Pls.' Opp'n"), Mills Mot., ECF No. 10, Ex. A. That same day, Plaintiffs filed oppositions to the Named-Defendants' Motions to Quash. *See, e.g.*, Pls.' Opp'n, Mills Mot.. On July 30, 2019, the Named-Defendants filed replies to Plaintiffs' Oppositions. *See, e.g.*, Reply Mem. in Support of Mots. to Quash Subpoena Issued to Verizon, Mills Mot., ECF No. 11. On August 2, 2019, Plaintiffs filed oppositions to the Nonparty Petitioners' Motions to Quash. *See, e.g.*, Pls.' Resp. to Mots. to Quash Subpoena Issued to Verizon, Lightner Mot., ECF No. 9. That same date, Named-Defendants filed a memorandum in support of Nonparty Petitioners' Motions to Quash. *See, e.g.*, Mem. Joining Pets. Prince George's County, Kathleen Mills, Christopher Murtha, and Henry Stawinski's Reply Mem. in Support of Mots. to Quash Subpoena Issued to Verizon, Mills Mot., ECF No. 12. To date, Nonparty Petitioners have not filed replies.

**II. Discussion**

---

[6] Petitioners include the following named-Defendants in the Underlying Action: Kathleen Mills, Prince George's County, Henry P. Stawinski, and Christopher R. Murtha (collectively "Named-Defendants Petitioners"). Petitioners also include the following nonparties: Mistinette Mints, William Alexander, Joseph Ghattas, Todd Lightner, Hector Velez, and Melvin Powell (collectively "Nonparty Petitioners").

[7] Nonparty Petitioners Alexander and Mints filed their motions to quash on June 6, 2019. The remaining Petitioners filed their motions to quash on June 10, 2019.

Petitioners raise similar objections in each of their Motions to Quash. Specifically, Petitioners all argue that the Subpoena is overly broad as it seeks records and text content relating to a phone number for an entire three-year period without limiting the scope to the allegations raised in the Amended Complaint. *See* Mills Mot. ¶¶ 5–6; Prince George's County Mot. ¶ 10; Stawinski Mot. ¶ 9. Petitioners assert that the Subpoena is not reasonably calculated to lead to the discovery of admissible information and that it is not proportional to the needs of the case. *See* Mills Mot. ¶ 14; Prince George's County Mot. ¶¶ 14–15. According to Petitioners, even though Prince George's County owns most of the phone numbers and issued them to employees to be used for conducting official business, all of the employees use their official phones for personal use to some degree on a daily basis. *See* Ghattas Mot. ¶¶ 7–8. As a result, the Subpoena request would capture not only "privileged and personal" information (such as communications with family or medical providers), it would also capture information about irrelevant police business. *See* Mills Mot. ¶ 14; Prince George's County Mot. ¶¶ 14–15.

Prince George's County has a policy concerning the use of a county-issued phone number and how employees have no expectation of privacy. *See* Ghattas Mot. ¶ 6; Velez Mot. ¶¶ 6–7. Despite this, Petitioners assert that they have a "reasonable expectation of privacy" as it pertains to third parties. *See* Ghattas Mot. ¶ 18; Velez Mot. ¶ 18. Additionally, the Nonparty Petitioners are each only mentioned once or twice in the pleadings for the Underlying Action, if at all. *See, e.g.*, Mints Mot. ¶¶ 3, 5 (noting Petitioner Mints is only mentioned in the Amended Complaint once for an occurrence that allegedly happened in March 2017); Alexander Mot. ¶¶ 3, 5 (noting Petitioner Alexander is only mentioned in the Amended Complaint twice); Lightner Mot. ¶ 10 (noting Petitioner Lightner is not mentioned in the Amended Complaint at all). The Nonparty Petitioners assert that the Subpoena requests are merely a fishing expedition and an

invasion of privacy as Plaintiffs seek information to further grow their underlying case. *See, e.g.*, Alexander Mot. ¶ 11.[8]

In response, Plaintiffs assert two main arguments. First, Plaintiffs assert that the Motions to Quash are essentially moot as Plaintiffs have withdrawn their requests for text content. Pls.' Opp'n 2, 6. Plaintiffs assert that the remaining request for call records are "not personal, privileged, or confidential information" as they do not contain content. *Id.* Second, Plaintiffs counter that the Subpoena requests are not overbroad but target specific individuals whose communications are relevant to Plaintiffs' claims in the Underlying Action. Pls.' Opp'n 2–5.[9] Of the 1900 officers employed by the PGCPD, Plaintiffs allege to have identified "91 White officers who have engaged in racists conduct or perpetuated the [PGCPD] policy, custom and practice of racial discrimination and retaliation." Pls.' Opp'n 3. The Subpoena requests are targeted as they are only seeking information relating to 11 officers, who are either named-Defendants or "high-ranking officials" in PGCPD. Pls.' Opp'n 2–3.

In reply, Petitioners assert that their Motions to Quash are not moot as call logs still contain personal, confidential and privileged information. Pet'rs' Reply 3. Petitioners reassert that the information requested is too broad in scope and not proportional to the needs of the case. *Id.* at 3–4.

---

[8] Some of the Non-Party Petitioners raised concerns that by complying with the Subpoena as it pertains to requests for text content, Verizon would be forced to violate the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq. See* Velez Mot. ¶¶ 14, 20–21; Powell Mot. ¶¶ 16, 23–24. As of July 16, 2019, Plaintiffs have withdrawn their request for text content relating to these phone numbers. Accordingly, the Court need not address this issue at this time.

[9] For all ten proceedings, Plaintiffs submitted identical memorandum in opposition of Petitioners' Motions to Quash. Accordingly, they will be referred to collectively herein as "Plaintiffs' Opposition."

### A. Petitioners' Informal Motion to Strike Plaintiffs' Untimely Opposition

In their replies, Petitioners raise the matter that Plaintiffs' Oppositions to their Motions to Quash were untimely filed and request that the Court disregard the Oppositions. *See* Pet'rs' Reply 2. According to the Local Rules of this Court, "[u]nless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda." Loc. R. 105.2(a) (D. Md. Dec. 1, 2018). If service is by mail or electronic means, Federal Rule of Civil Procedure 6(e) permits the respondent an additional three days. Similarly, the Local Rules for the District Court of the District of Columbia require oppositions to be filed "[w]ithin 14 days of the date of service or at such other time as the Court may direct . . . ." Loc. Civ. R. 7(b) (D.D.C. July 19, 2019).

Here, Petitioners filed their Motions to Quash in the District of Columbia on June 6 and 10, 2019. Plaintiffs' Oppositions were filed on July 16 and August 2, 2019, over a month later. Plaintiffs provide no explanation for their delay. It is within a court's discretion whether it will accept an untimely filing. *See H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000), *aff'd*, 30 F. App'x 75 (4th Cir. 2002) (unpublished disposition) (noting the Local Rules "do[ ] not specify the consequence to be administered if that deadline is not met" and "[i]n its discretion, therefore, the court may hear an untimely opposition"). In fact, courts have granted dispositive motions without considering untimely oppositions. *See Wonasue v. Univ. of Maryland Alumni Ass'n*, No. PWG-11-3657, 2013 WL 5719004, at *5 (D. Md. Oct. 17, 2013) (noting "[c]ourts in the Fourth Circuit also have granted summary judgment without considering untimely oppositions" and discussing cases). However, as this Court would prefer to have matters decided on their merits it will consider Plaintiffs' Oppositions. While the Court is

willing to grant Plaintiffs an extension for their time to file opposition *nunc pro tunc* in this instance, the Court cautions Plaintiffs from any further untimely filings without requesting the appropriate relief in advance.

### B. Motions to Quash the Subpoena

Turning to the merits of the Motions to Quash, Petitioners argue that the requested phone records are overly broad and not proportional to the claims at issue. *See, e.g.*, Mills Mot. ¶¶ 5–6; Prince George's County Mot. ¶ 10; Stawinski Mot. ¶ 9. The Federal Rules of Civil Procedure govern the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Accordingly, it is "relevance and not admissibility" that determines whether a matter is discoverable. *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997). "Relevance is not, on its own, a high bar." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). "Information sought need only 'appear[ ] [to be] reasonably calculated to lead to the discovery of admissible evidence' to pass muster." *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, Civ. No. JKB-17-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018) (quoting *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014)). However, "the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). What is discoverable is limited by the requirement of "[p]roportionality[,] [which] requires courts to consider, among other things, 'whether the burden or expense of the

proposed discovery outweighs its likely benefit.'" *Jordan*, 921 F.3d 180, 188–89 (citing Fed. R. Civ. P. 26(b)(1)).[10]

Per Federal Rule of Civil Procedure 45(d)(3)(A)(iii), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Waiver occurs when a party raises the privileged or protected issue as part of a claim or defense. *See Todd v. XOOM Energy, LLC*, No. GJH-15-00154, 2018 WL 5081156, at *3 (D. Md. Oct. 18, 2018) (holding a plaintiff did not consent to the release of her medical records "either expressly or implicitly by waiving her rights through the filing of the suit" as her claims alleged deceptive and fraudulent advertising, "claims do not involve her medical condition, and [plaintiff] has not injected medical issues into the litigation thus far"); *see also Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 124 (E.D. Va. 2009) ("The Court must determine which, if any, privileges preclude production of the records sought; whether [a plaintiff] has waived any otherwise applicable privileges either by putting her emotional or physical condition at issue or by producing privileged documents; and finally, the extent to which the records sought are relevant."). "Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected. The text of Rule 45 makes that clear, encompassing burdens on any 'person,' not just the recipient of the subpoena." *Jordan*, 921 F.3d at 189–90 (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). However, "objections to discovery based on claims of privilege must be made with specificity." *Adams v. Sharfstein*, Civ. No. CCB-11-3755, 2012 WL 2992172, at *3 (D. Md. July 19, 2012) (denying a non-party's objections that a

---

[10] What is considered a "burden" is not necessarily limited to the amount of time or resources complying with a request might require. "For example, a subpoena may impose a burden by invading privacy or confidentiality interests." *Jordan*, 921 F.3d at 189.

defendant's requests for medical records were privileged as the objections were not specific but rather general and made "in boilerplate fashion").

### 1. Petitioners Do Not Have Sufficient Standing To Have The Subpoena Quashed.

As a threshold matter, this Court must determine whether Petitioners have standing to challenge the Subpoena. The Fourth Circuit has held that "[o]rdinarily, a party does not have standing to challenge a subpoena issued to a nonparty," however, a party may do so if it "claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005). In this case, Petitioners assert standing and argue that they have a right to privacy or a personal interest in the call log information regardless of whether it is owned by the county. Petitioners cite to the Prince George's County's Electronic Information Policy as support for their assertion that they retain a "reasonable expectation of privacy" as it pertains to disclosures to third parties. *See, e.g.*, Ghattas Mot. ¶ 18 (citing to Exhibit 2); Velez Mot. ¶ 18. However, the Electronic Information Policy specifically states that employees have "no expectation of privacy regarding any information created, sent, received, or stored through or by Prince George's County Governments electronic information systems." *See, e.g.*, Electronic Information Policy I.C, Ghattas Mot., Ex. 2. The policy contains no caveat for disclosures to third parties, this includes the incidental personal use that is permitted by the policy. In short, while it may be permitted use, the employee is on notice that he or she should have no expectation of privacy when he or she uses a county-owned phone number. *Id.* at 6 ("It is the responsibility of all employees to become familiar with and to comply with all OITC Policies and Standards relating to information and information systems and the associated and referenced guidelines, processes, and procedures.").

Contrary to Petitioners assertion, "[a]n individual does not have a legitimate expectation of privacy in the telephone numbers that are dialed on his or her telephone." *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, No. 09-1201-PWG, 2011 WL 3651821, at *2 (D. Md. Aug. 17, 2011). *Corsair* relies upon a decision from a sister court in the Fourth Circuit, which in turn relies upon several Supreme Court decisions for the principle that while the user of the phone may subjectively believe their use of the phone, including the numbers dialed, may be a private matter, this is not a belief or expectation that society is willing to protect from disclosure. *Booker v. Dominion Virginia Power*, No. 3:09cv759, 2010 WL 1848474, at *9 (E.D. Va. May 7, 2010). Petitioners do not have the requisite standing to have the Subpoena quashed.

### 2. The Court Does Not Find The Subpoena To Be Within The Scope of Discovery

While the door of "standing" is closed and locked, Petitioners effectively obtain the relief through another door regarding the scope of discovery. As discussed earlier, Petitioners contend that the Subpoena is overbroad and not proportional to the needs of this case. While they have not provided justification to have the Subpoena quashed, they do have standing to challenge the Subpoena for purposes of obtaining a protective order. *See Arndt v. Ford Motor Co.*, No. 2:15-cv-11108, 2016 WL 1161444, at *2 (E.D. Mich. Mar. 24, 2016); *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012).

As stated in the Federal Rule of Civil Procedures, the Court must limit the extent of discovery if it determines that the "proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii). The Subpoena does not satisfy the proportionality concerns as the "proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While it is true that Respondents do not seek knowledge of substantive communications and

have now abandoned the effort to obtain text information, the benefit remaining is no more than residue considering the issues in the case.

Effectively, Respondents hope to draw connections between known and unknown phone numbers used by Petitioners, linked by dates and times, to make inferential leaps to support the claims of conspiratorial acts by Petitioners. While in a very limited context this approach might have more probative weight amounting to the artful term of "being reasonably calculated to lead to the discovery of admissible evidence," the broad swath of information sought here is not justifiable. In many instances the supposed connections between phone numbers and contacts between Defendants are conceded and necessary as being within the scope of the legitimate demands of employment.

Equally troubling, are the storehouses of phone numbers, dates, and times of calls that would be injected into this case that have no relation to the claims and defenses of the parties. The more than three years of call histories for each phone number is not remotely helpful in resolving the issues in this case. It is nothing more than a treasure trove 1) of expanding investigations of the details of unknown and unknowable conversations and activities, and 2) disclosures of stray communications which can only increase the expense and burdens of the litigation. This angle of discovery is no more than a 21st century version of Pandora's Box. As Petitioners have indicated, every conceivable phone communication would be in play, from conversations about the need for adjusting police manpower and assignments, to efforts to schedule dental appointments. It is for the Respondents to more narrowly tailor requests of this nature so that the scales of relevance and proportionality at least tip in favor of requiring compliance with said Subpoena. Here, Respondents ask for too much to obtain too little. A

subpoena imposes an undue burden on a party when a subpoena is overbroad. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).

### C. Protective Order[11]

Petitioners request that a protective order be put in place to prohibit Plaintiffs from seeking this information in the future. *See* Stawinski Mot. ¶ 16. For the reasons stated above, the Court GRANTS this request.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** Petitioners' Motions for Protective Orders and **DENIES** Petitioners' Motions to Quash.

September 13, 2019               /s/
                                 Charles B. Day
                                 United States Magistrate Judge

CBD/clc

---

[11] On July 1, 2019, the undersigned signed a stipulated protective order submitted by the parties. *See* Stipulated Order Regarding Confidentiality of Discovery Material ("Stipulated Protective Order"), Underlying Action, ECF No. 72. The Stipulated Protective Order permits the provider of material produced in the course of discovery to designate it "CONFIDENTIAL only when such person in good faith believes it contains sensitive personal, medical, financial, or disciplinary information." *Id.* at ¶ 1(a). The Stipulated Protective Order further states that "[i]nformation or documents designated as confidential . . . shall not be used or disclosed by the parties or counsel for the parties . . . for any purpose whatsoever other than preparing for and conducting the litigation" in the Underlying Action. *Id.* at ¶ 1(c). The Stipulated Protective Order does include limited categories of people to whom disclosure of the confidential material is permissible and requires written consent or an order of the Court before anyone outside that limited category is permitted access to the information. *Id.* at ¶ 1(d)(ix). Finally, at the end of the litigation the Stipulated Protective Order requires all confidential materials "be returned to the originating party" or destroyed if the parties agree. *Id.* at ¶ 5.